# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### AT CLARKSBURG

**CGB, INC.,**

**BERWIND GROUP OIL & GAS, L.P.,**

and

**BERWIND OIL & GAS LLC,**

**Plaintiffs,**

v.

**EQT PRODUCTION COMPANY,**

and

**EQT GATHERING EQUITY, LLC,**
**a/k/a EQUITRANS GATHERING a/k/a EQUITRANS TRANSMISSION**

**Defendants.**

> ELECTRONICALLY
> FILED
> Dec 23 2016
> U.S. DISTRICT COURT
> Northern District of WV

Civil Action No. _1:16-CV-240_

Judge _Keeley_

## COMPLAINT

CGB, Inc., Berwind Group Oil & Gas, L.P., and Berwind Oil & Gas LLC (collectively the "Berwind Companies"), by and through its counsel, does hereby plead as follows:

1.  CGB, Inc. ("CGB") is a West Virginia corporation, with its principal office in Charleston, West Virginia.

2.  Berwind Group Oil & Gas, L.P. ("Berwind Group") is a limited partnership with its principal office in Charleston, West Virginia.

3.  Berwind Oil & Gas LLC ("Berwind Oil & Gas") is a limited liability company with its principal office in Charleston, West Virginia.

4.      EQT Production Company ("EQT Production") is a Pennsylvania corporation, with its principal office in Pittsburgh, Pennsylvania.

5.      EQT Gathering Equity, LLC is a limited liability company, which upon information and belief is also known as Equitrans Gathering and/or Equitrans Transmission ("EQT Gathering Equity").   Upon information and belief, EQT Gathering Equity's principal office is in Pittsburgh, Pennsylvania.

6.      EQT Production and EQT Gathering Equity are collectively referred to herein as "EQT."

### JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, because all of the Plaintiffs and all of the Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.      This Court has personal jurisdiction over EQT Production and EQT Gathering Equity because both entities have purposefully engaged in conduct directed at West Virginia and both regularly conduct business within West Virginia.

9.      Venue is appropriate in the Northern District of West Virginia pursuant to 28 U.S.C. § 1391 because the cause of action arose in Gilmer, Calhoun and Lincoln Counties, West Virginia (collectively, the "Prospect Counties"). The real property affected by the circumstances giving rise to this cause of action is located in the Prospect Counties, with a substantial part of the property being located in Gilmer and Calhoun Counties, which are within the Northern District of West Virginia.

**FACTUAL BACKGROUND**

10.     CGB entered into those certain Joint Venture Agreements with Waco Oil and Gas Company, Inc., a West Virginia corporation ("Waco"), dated October 31, 1989, November 1, 1989, and January 2, 1990, true and authentic copies of which are attached hereto as **Exhibit 1** (the "CGB Joint Venture Agreements").

11.     Berwind Group entered into those certain Joint Venture Agreements with Waco dated October 5, 1990, February 1, 1991, March 21, 1990, May 1, 1990, and May 15, 1991, true and authentic copies of which are attached hereto as **Exhibit 2** (the "Berwind Group Joint Venture Agreements").

12.     Berwind Oil & Gas, Inc. (a predecessor-in-interest to Berwind Oil & Gas) entered into those certain Joint Venture Agreements with Waco dated April 1, 1992, October 25, 1991, and September 15, 1992, true and authentic copies of which are attached hereto as **Exhibit 3** (the "Berwind Oil & Gas Joint Venture Agreements").

13.     The CGB Joint Venture Agreements, the Berwind Group Joint Venture Agreements, and the Berwind Oil & Gas Joint Venture Agreements are collectively referred to herein as the "Joint Venture Agreements."

14.     Pursuant to the Joint Venture Agreements, Waco contributed mineral leases and other rights pertaining to property located in the Prospect Counties (the "Prospects"), and the parties agreed to drill, complete, equip and hook up one hundred and thirty nine (139) oil and gas wells on the Prospects.

15.     Pursuant to the Joint Venture Agreements, CGB holds a 33.333% working interest and Waco holds a 66.67% working interest in nine (9) of the wells, and CGB holds a 25.00% working interest and Waco holds a 75.00% working interest in the remaining five (5)

wells, all of which is set forth in the specific CGB Joint Venture Agreement. Berwind Oil & Gas holds a 25% working interest and Waco holds a 75% working interest in twenty-five (25) wells and Berwind Oil & Gas holds a 33.333% working interest and Waco holds a 66.67% working interest in an additional twenty-five (25) wells, all of which is set forth in the specific Berwind Oil & Gas Joint Venture Agreement. Berwind Group holds a 33.333% working interest and Waco holds a 66.67% working interest in seventy-five (75) wells, all of which is set forth in the specific Berwind Group Joint Venture Agreement.

16.     At the same time that it entered into the Joint Venture Agreements, Waco and CGB entered into related Drilling Agreements dated October 31, 1989, November 1, 1989, and January 2, 1990, true and authentic copies of which are attached hereto as **Exhibit 4** (the "CGB Drilling Agreements"). Waco and Berwind Group entered into related Drilling Agreements dated October 5, 1990, February 1, 1991, March 31, 1990, May 1, 1990, and May 15, 1991, true and authentic copies of which are attached hereto as **Exhibit 5** (the "Berwind L.P. Drilling Agreements"). Waco and Berwind Oil & Gas, Inc. (a predecessor-in-interest to Berwind Oil & Gas) entered into related Drilling Agreements dated April 1, 1992, October 25, 1991, and September 15, 1992, true and authentic copies of which are attached hereto as **Exhibit 6** (the "Berwind Oil & Gas Drilling Agreements"). The CGB Drilling Agreements, the Berwind Group Drilling Agreements, and the Berwind Oil & Gas Drilling Agreements are collectively referred to herein as the "Drilling Agreements."

17.     Additionally, Waco and CGB entered into Operating and Production Agreements dated October 31, 1989, November 1, 1989, and January 2, 1990, true and authentic copies of which are attached hereto as **Exhibit 7** (the "CGB Operating Agreements"), with respect to the development of the same acreage. Similarly, Waco and Berwind Group entered into Operating

4

and Production Agreements dated October 5, 1990, February 1, 1991, March 31, 1990, May 1, 1990, and May 15, 1991, true and authentic copies of which are attached hereto as **Exhibit 8** (the "Berwind Group Operating Agreements"), and Waco and Berwind Oil & Gas, Inc. (a predecessor-in-interest to Berwind Oil & Gas) entered into Operating and Production Agreements dated April 1, 1992, October 25, 1991, and September 15, 1992, true and authentic copies of which are attached hereto as **Exhibit 9** (the "Berwind Oil & Gas Operating Agreements"). The CGB Operating Agreements, the Berwind Group Operating Agreements, and the Berwind Oil & Gas Operating Agreements are collectively referred to herein as the "Operating Agreements."

18.     The Joint Venture Agreements, Drilling Agreements, and Operating Agreements are hereinafter referred to collectively as the "Prospect Agreements."

19.     Waco was appointed as the drilling contractor and operator under the terms and conditions of Sections 5.1 and 5.2 of the Joint Venture Agreements and Section 4.1 of the Drilling Agreements.

20.     In its capacity as the operator and drilling contractor under the Joint Venture Agreements and Drilling Agreements, Waco subsequently drilled and operated one hundred and thirty nine (139) oil and gas wells in the Prospect Counties, West Virginia, pursuant to the Prospect Agreements (collectively, the "Wells") and constructed a pipeline gathering system to transport production from those Wells to a third party pipeline.

21.     Title to one hundred and thirty seven (137) of the Prospect Agreements and the Wells was passed from Waco to EQT Production through various transactions, and, on or about January of 2000, EQT Production acquired the assets subject to the Prospect Agreements and succeeded to the position of operator pursuant to the Prospect Agreements.

22.     Section 4.2 of the Joint Venture Agreements provides that "WACO [now EQT Production] shall assure that the costs incurred in connection with the Wells will be reasonable and will not exceed the field prices which could obtained for similar services in arms'-length transactions in relevant geographic areas."

23.     Section VI of the Joint Venture Agreements states in pertinent part that "WACO [now EQT Production] shall use its **best efforts** to achieve for the Joint Venture the most favorable price and delivery schedule available for a product from the Wells.  Further, WACO hereby undertakes **a fiduciary duty** to [the Berwind Companies] in respect to the sale of the product from the Wells and hereby represents, warrants, and covenants that WACO shall take all actions which it determines to be reasonably necessary to commence the marketing and/or sale of the product from the Wells ...." (emphasis added).

24.     Based on information and belief, since EQT Production acquired its interest in the Wells, EQT Production has never improved, modified or expanded the pipeline gathering and transportation system through which it moves production from the Wells to a third party purchaser.

25.     As way of a historical perspective, beginning in 2006 and continuing until the present, EQT Production has charged certain fees and deductions to the Berwind Companies for the gathering and transportation of gas from the Wells.

26.     Beginning in or around 2013, the rate at which EQT Production began paying gathering and transportation fees increased as follows: (i) for the wells in which CGB has working interests, the fees increased from an average rate of $0.84/Dth to an  average rate of $1.98/Dth; (ii) for the wells in which Berwind Oil & Gas has working interests, those fees increased from an annual average of $0.28/Dth to $1.43/Dth; and (iii) for the wells in which

Berwind Group has working interests, those fees increased from an annual average of $0.23/Dth to $1.44/Dth, with all increases being done without any notice or explanation to the Berwind Companies.

27.     Based on our information and belief, commencing in or around January of 2013, EQT Production began paying the increased rate for the first time without any addition to, modification to or rerouting of the pipeline transportation system that transports natural gas from the Wells, to a third party transportation system.

28.     Upon information and belief, this additional transportation fee was for EQT Production's affiliated company, EQT Gathering Equity.

29.     In or around 2015, the price being obtained by EQT Production for gas sold from the Wells had decreased to a level at which the gathering and transportation fees paid by EQT Production to its affiliated company, EQT Gathering Equity, exceeded the proceeds from the production of gas from the Wells so that the Berwind Companies no longer obtained any income for its share of the production from the Wells.

30.     As a result of EQT Production paying the increased charges, EQT Production began to charge back to the Berwind Companies its working interest share of the amount by which the gathering and transportation charges of EQT Gathering Equity exceeded the proceeds from the sale of the gas produced from the Wells without any notice to the Berwind Companies.

31.     These negative charge backs by EQT Production to the Berwind Companies have continued through the current date, and EQT Production has never provided any explanation for the continued sale of production from the Wells as a net loss to the joint ventures.

32.     The Berwind Companies have repeatedly requested that EQT Production act in a reasonable and prudent manner and either reduce the excessive gathering and transportation fees

associated with gas produced from the Wells or shut-in the Wells until the market price of their production exceeds the associated costs and expenses.

33.    However, EQT Production has refused to either reduce the fees or shut-in the Wells, and as a result continues to bill the Berwind Companies for the negative expenses associated with the production from these Wells caused by EQT Production's payment of excessive fees and, upon information and belief, the pass through of the fees of EQT Gathering Equity, its affiliated company.

34.    The Berwind Companies have refused to pay the negative charge-backs from EQT Production, because, among other things, the gathering and transportation fees exceeded the market rate for similar services in that same geographic area, and EQT Production as operator, had not previously passed through the higher rate for gathering and transportation charges by EQT Gathering Equity.

35.    As a result of the incorrect and/or excessive charges to the Berwind Companies dating back to at least January 2013, the Berwind Companies have incurred and will continue to incur damages for which they are entitled full compensation.

## COUNT ONE – BREACH OF CONTRACT

36.    The Berwind Companies repeat and incorporate herein by reference all of the allegations and facts contained in Paragraphs 1 through 35 of this Complaint.

37.    EQT Production has violated Section 4.2 of the Joint Venture Agreements by paying fees for the gathering and transportation of production from the Wells which are in excess of the field prices for similar services in arms' length transactions in relevant geographic areas.

38.    EQT Production has further violated Section 4.2 of the Joint Venture Agreements by, upon information and belief, passing through excessive transportation fees from EQT

Gathering Equity, its affiliated company, without any improvement, modification, or expansion of the pipeline gathering and transportation system used by EQT Production and its predecessors-in-interest to transport this production from the Wells to a third party purchaser.

39.     EQT Production has breached Section VI of the Joint Venture Agreements by failing to achieve the most favorable prices and delivery schedule available for the production from the Wells.

40.     EQT Production has breached Section 4.2 and Section VI of the Joint Venture Agreements by, upon information and belief, continuing production of gas from the Wells in order to make a profit from the excessive gathering and transportation fees charged by EQT Gathering Equity, its affiliated company, while extracting this profit from the Berwind Companies through charge backs for these expenses.

41.     EQT Production's breaches have caused, and will continue to cause, the Berwind Companies to suffer damages and the Berwind Companies are entitled to recover all compensatory damages for these breaches of the Joint Venture Agreements by EQT Production.

## COUNT TWO – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

42.     The Berwind Companies repeat and incorporate herein by reference all of the allegations and facts contained in Paragraphs 1 through 41 of this Complaint.

43.     EQT Production owes a duty to act in good faith and to deal fairly with the Berwind Companies with regard to the Prospect Agreements.

44.     EQT Production has violated its obligations of good faith and fair dealing to the Berwind Companies pursuant to the Joint Venture Agreements as described above.

45.     The Berwind Companies have incurred, and will continue to incur, damages associated with the foregoing conduct.

46.     The Berwind Companies are entitled to recover damages for breaches of the duty of good faith and fair dealing by EQT Production.

## COUNT THREE – BREACH OF FIDUCIARY DUTY

47.     The Berwind Companies repeat and incorporate herein by reference all of the allegations and facts contained in Paragraphs 1 through 46 of this Complaint.

48.     Pursuant to the joint ventures, EQT Production has a fiduciary duty to develop, operate, and market production from the Wells in a reasonable and cost effective manner for the benefit of the Berwind Companies.

49.     EQT Production has violated its fiduciary duty by paying excessive gathering and transportation fees and charging them back to the Berwind Companies.

50.     EQT Production has violated its fiduciary duty by, upon information and belief, passing through transportation fees by EQT Gathering Equity, its affiliated company, without any improvement, modification, or expansion of the associated pipeline gathering and transportation system through which production from the Wells is delivered to market.

51.     EQT Production has violated its fiduciary duty by charging losses on the sale of production from the Wells through as fees to the account of its joint venturer, the Berwind Companies.

52.     EQT Production has violated its fiduciary duty by continuing the production of oil and gas from the Wells in order to make a profit from the excessive gathering and transportation fees charged by EQT Gathering Equity, its affiliated company, while extracting this profit from the Berwind Companies through charge backs for these expenses.

53.     The Berwind Companies have incurred, and will continue to incur, damages associated with the foregoing conduct.

54.     The Berwind Companies are entitled to recover compensatory damages and punitive damages for breaches by EQT Production of its fiduciary duties owed to the Berwind Companies.

### COUNT FOUR – DECLARATORY JUDGMENT

55.     The Berwind Companies repeat and incorporate herein by reference all of the allegations and facts contained in Paragraphs 1 through 54 of this Complaint.

56.     An actual controversy exists between the Berwind Companies and EQT Production regarding their respective rights and responsibilities under the Prospect Agreements.

57.     The Berwind Companies seek a declaration of the parties' rights and responsibilities under the Prospect Agreements.

58.     Declaratory judgment is necessary to resolve the parties' ongoing disputes regarding these obligations.

59.     The Berwind Companies respectfully request that the Court declare that EQT Production must (i) reduce its gathering and transportation fees to a reasonable amount not to exceed the field prices for similar services in arms'-length transactions in relevant geographic areas, (ii) stop passing through the unreasonable transportation fees of its affiliated company, EQT Gathering Equity, or any other EQT-affiliated company, and (iii) refund the Berwind Companies the losses attributed to these Wells from the previous imposition of excessive gathering and transportation fees by EQT Production.

### COUNT FIVE – UNJUST ENRICHMENT

60.     The Berwind Companies repeat and incorporate herein by reference all of the allegations and facts contained in Paragraphs 1 through 59 of this Complaint.

61.     Upon information and belief, EQT Gathering Equity has received unreasonable transportation fees from its affiliate EQT Production, which were then charged to the Berwind Companies.

62.     These unreasonable transportation fees conferred a benefit upon EQT Gathering Equity at the expense of the Berwind Companies.

63.     EQT Gathering Equity has been unjustly enriched as a result of these unreasonable transportation fees. As a result, EQT Gathering Equity should be required to disgorge those transportation fees and make restitution to the Berwind Companies for the entire amount of the unreasonable fees, plus interest thereon.

WHEREFORE, the Berwind Companies respectfully request that this Court enter judgment in their favor with regard to the following: (a) all breaches of the Joint Venture Agreement by EQT Production; (b) all breaches of the duty of good faith and fair dealing concerning the Prospect Agreements; (c) all breaches of EQT Production's fiduciary duties to the Berwind Companies; (d) declaratory relief as set forth herein; (e) unjust enrichment as set forth herein; (f) award the Berwind Companies compensatory damages for EQT's actions as outlined above; (g) award the Berwind Companies punitive damages, pre-judgement and post-judgment interest, and reasonable attorneys' fees and expenses incurred in obtaining the relief to which the Court may find that the Berwind Companies are entitled; and (h) for a jury trial on all issues so triable; and (i) for any such other relief as justice may require.

Respectfully submitted,

/s/ Arie M. Spitz
Arie M. Spitz (W.V. Bar #: 10867)
Grahmn N. Morgan (to be admitted *Pro Hac Vice*)
Adrianne C. Strong (to be admitted *Pro Hac Vice*)
DINSMORE & SHOHL LLP
P.O. Box 11887
Charleston, WV 25339-1887
Phone: (304) 357-0900
Fax: (304) 357-0919
Email: arie.spitz@dinsmore.com
grahmn.morgan@dinsmore.com
adrianne.strong@dinsmore.com
*Counsel for Plaintiffs*

10894814v1